Attorney Code: 56028

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | |
|---|---|
| JOHN M. ERWIN, Individually and on Behalf of All Others Similarly Situated, )<br>)<br>) | Case No. 1:23-cv-16205 |
| ) | <u>CLASS ACTION</u> |
| Plaintiff, )<br>) | |
| vs. ) | |
| ) | |
| VERADIGM INC., et al., )<br>) | |
| Defendants. )<br>) | |
| ) | <u>DEMAND FOR JURY TRIAL</u> |

AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Plaintiff John M. Erwin ("plaintiff"), individually and on behalf of all others similarly situated, by plaintiff's undersigned attorneys, for plaintiff's complaint against defendants, alleges the following based upon personal knowledge as to plaintiff and plaintiff's own acts, and upon information and belief as to all other matters based on the investigation conducted by and through plaintiff's attorneys, which included, among other things, a review of U.S. Securities and Exchange Commission ("SEC") filings by Veradigm Inc. ("Veradigm" or the "Company"),[1] conference call transcripts, and press releases by the Company and its executives, as well as media and analyst reports about the Company. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a securities class action on behalf of all purchasers of Veradigm common stock between February 26, 2021 and December 7, 2023, inclusive (the "Class Period"). Plaintiff seeks to pursue remedies against Veradigm and its most-senior executives under the federal securities laws.

2. Defendant Veradigm is a healthcare technology company that offers electronic health records ("EHR"), financial management, population health management, and consumer solutions to over 300,000 U.S. healthcare providers.

3. During the Class Period, defendants emphasized Veradigm's strong revenue, gross margin, and EBITDA growth to investors during the Company's quarterly earnings calls. These and similar statements during the Class Period were materially false and misleading when made. Specifically, defendants failed to disclose, *inter alia*, that:

      (a)     Veradigm had overstated its historical revenues by at least $20 million;

---

[1]     Prior to January 1, 2023, Veradigm was known as Allscripts Healthcare Solutions, Inc.

4874-1625-3850.v1

(b)     Veradigm had artificially inflated its revenue by recording duplicate transactions, among other things, over a more than two-year period;

(c)     Veradigm had artificially inflated its earnings and margins and materially misrepresented demand for the Company's products and services during the Class Period;

(d)     Veradigm had failed to maintain effective internal controls over its financial reporting;

(e)     Veradigm had failed to comply with Generally Accepted Accounting Principles ("GAAP") regarding appropriate revenue recognition practices; and

(f)     as a result of the foregoing, the Company's financial projections were materially false and misleading and lacked any reasonable basis.

4.     On February 28, 2023, Veradigm issued a press release announcing that, in conjunction with its year-end audit procedures, the Company had "detected certain internal control failures related to revenue recognition that had occurred over the prior six quarters, resulting in a misstatement of reported revenues during those periods." The Company further described that the revenue misstatements were the result of recording duplicate sales transactions that had caused revenue to be overstated by approximately $20 million from the third quarter of 2021 until the fourth quarter of 2022. As a result of the accounting errors, Veradigm slashed its previously provided fiscal 2023 revenue guidance by $15 million and its non-GAAP earnings per share guidance by $0.10 per share. Finally, Veradigm announced that its previously scheduled fourth quarter 2022 earnings release and the filing of its fiscal 2022 Form 10-K would be delayed until its review of the accounting errors and internal control failures was completed. On this news, the price of Veradigm stock closed down nearly 13% on March 1, 2023, on heavy trading volume.

5.     Less than one month later, on March 22, 2023, Veradigm issued a press release announcing that it had determined that the size and scope of the revenue misstatements were

- 2 -

significantly greater than previously disclosed. Veradigm provided an updated estimate of its historical revenue misstatements, stating that, in total, revenue had been overstated by approximately $40 million during fiscal 2021 and fiscal 2022. Veradigm disclosed that each of its quarterly filings in fiscal 2021 and fiscal 2022 could no longer be relied upon, and would need to be restated. Veradigm also revealed that the Company would "report one or more material weaknesses as of December 31, 2022 . . . related to the recognition of revenue and certain other non-routine review controls." In addition, Veradigm slashed the low end of its previously disclosed fiscal 2023 revenue guidance range by another $10 million.

6.      On May 19, 2023, Veradigm issued a press release announcing the Company was not in compliance with Nasdaq Listing Rule 5250(c)(1) because the Company had not filed with the SEC its fiscal 2022 Annual Report on Form 10-K or its Q1 2023 Quarterly Report on Form 10-Q. Veradigm stated that its accounting review was ongoing and that the Company planned to file its fiscal 2022 Form 10-K on or around June 14, 2023.

7.      On June 13, 2023, Veradigm issued a press release announcing that it had identified additional revenue misstatements dating back to fiscal 2020. Veradigm further disclosed that its internal review on the nature and extent of the accounting and internal control errors would take longer than previously disclosed, and the Company's independent auditors needed more time to complete their audit procedures. As such, the Company disclosed it would not meet the deadline to file its Form 10-K and stated that it expected to file its fiscal 2022 Form 10-K and Q1 2023 Form 10-Q on or prior to Nasdaq's September 18, 2023 deadline. On this news, the price of Veradigm stock closed down more than 4% on June 14, 2023 on heavy trading volume.

8.      On August 10, 2023, Veradigm filed with the SEC on Form NT 10-Q a notice that it was still unable to file its periodic financial reports as a result of the Company's historical misstatements of its financial results.

9.     On August 18, 2023, Veradigm issued a press release announcing that it had received an additional notice of non-compliance with Nasdaq's listing requirements, and that it was unsure whether it could regain compliance by the September 18, 2023 deadline.

10.     On September 18, 2023, Veradigm issued a press release announcing that it was again revising the amount of the expected restatement to a $20 million cumulative impact for the periods of fiscal 2020 through 2022.  The Company stated that it did not expect to file its belated periodic SEC filings within the 180-day Nasdaq exception period and as a result expected to receive a delisting notice from the exchange.  The Company stated that the reason for the extended delay "primarily resulted from the need to build a new supplemental revenue system tool and the extensive manual work to aggregate and map the Company's historical transaction data into the new system tool."

11.     On September 22, 2023, Veradigm issued a press release disclosing that it had received a delisting notice from Nasdaq due to its failure to regain compliance with the exchange rules and planned to contest the delisting decision by requesting a hearing with the exchange. Ultimately, Nasdaq would allow Veradigm to temporarily and conditionally remain listed and extended the time for the Company to regain compliance to on or before February 27, 2024.

12.     On December 8, 2023, Veradigm issued a press release stating that both its Chief Executive Officer ("CEO"), defendant Richard Poulton, and its Chief Financial Officer ("CFO"), Leah Jones, had been forced to resign from the Company at the request of Veradigm's Board of Directors (the "Board").  The release stated that the resignations were the direct result of the investigation by the Audit Committee of the Board into the accounting proprieties that form the subject of this case.  The release also suggested that the scope of the historical misstatements of Veradigm's financial reporting may be larger than previously disclosed, stating: "The potential impact, if any, to the financial statements for previously reported periods as a result of the

- 4 -

independent investigation is under review by the new leadership team." On this news, the price of Veradigm stock closed down more than 20% on December 8, 2023 on heavy trading volume.

13. As of the filing of this complaint, Veradigm has still not remediated the material weakness in its financial controls, rectified its misstatement of its prior financial results, regained compliance with Nasdaq listing requirements, or filed its overdue periodic filings with the SEC. By the end of the Class Period, the price of Veradigm stock had fallen to a low of less than $10 per share, less than *half* the Class Period high, inflicting substantial financial losses and economic damages on plaintiff and the Class (defined below).

## JURISDICTION AND VENUE

14. Jurisdiction is conferred by §27 of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C.§78aa . The claims asserted herein arise under §§10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. §240.10b-5. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§1331 and 1337, and §27 of the Exchange Act.

15. Venue is proper in this District pursuant to §27 of the Exchange Act and 28 U.S.C. §1391(b) because the Company conducts business in this District and certain of the defendants reside in this District. Veradigm's principal executive offices are located in this District.

16. In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

17. Plaintiff John M. Erwin, as set forth in the Certification filed with the initial complaint on November 22, 2023 (ECF 1), purchased Veradigm common stock during the Class Period and has been damaged thereby.

18. Defendant Veradigm is a healthcare technology company headquartered in Chicago, Illinois. The Company's common stock is listed on the Nasdaq under the ticker symbol "MDRX."

19. Defendant Paul M. Black ("Black") was Veradigm's CEO and served on the Board from the start of the Class Period through May 5, 2022. After resigning as CEO, Black continued as an Executive Consultant to the Company through June 30, 2022 and served on the Board until June 2022.

20. Defendant Richard J. Poulton ("Poulton") was Veradigm's President and CFO from the start of the Class Period through May 6, 2022. Poulton was appointed as Veradigm's CEO on May 6, 2022, and served as CEO and on the Board until his forced resignation in December 2023.

21. Defendant Leah S. Jones ("Jones") was Veradigm's CFO and principal accounting officer from May 6, 2022 until her forced resignation in December 2023. Prior to her appointment as CFO, Jones was a Senior Vice President and General Manager of the Company's Ambulatory business unit.

22. The defendants referenced above in ¶¶19-21 are referred to herein as the "Individual Defendants." The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Veradigm's quarterly reports, shareholder letters, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market. They were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions with the Company, and their access to material, non-public information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations

being made were then materially false and misleading. The Individual Defendants are liable for the false and misleading statements pleaded herein.

23.     Defendants are liable for: (i) making false statements; and (ii) failing to disclose adverse facts known to them about Veradigm. Defendants' fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Veradigm common stock was a success, as it: (i) deceived the investing public regarding Veradigm's business, operations, and financial results; (ii) artificially inflated the price of Veradigm common stock; and (iii) caused plaintiff and other members of the Class to purchase Veradigm common stock at artificially inflated prices.

## BACKGROUND

24.     Veradigm is a healthcare technology company. At the start of the Class Period, Veradigm operated two primary business segments: (i) the Hospitals and Large Physician Practices segment; and (ii) the Veradigm segment. The Hospitals and Large Physician Practices segment derived its revenue from the sale of integrated clinical and financial management solutions, which primarily include EHR-related software, related installation, support and maintenance, outsourcing, and private cloud hosting. The Hospitals and Large Physician Practices business segment, which was later sold by Veradigm, generated $927 million during fiscal 2021, approximately 62% of the Company's total revenue. The Veradigm reportable segment derived its revenue from payer and life sciences solutions, and from the sale of software applications for patient engagement and EHR software to single-specialty and small and mid-sized physician practices. The Veradigm segment generated $552 million during fiscal 2021, approximately 37% of the Company's total revenue. However, following the sale of the Hospitals and Large Physician Practices segment, which closed in May 2022, the Veradigm segment is the Company's only reportable segment.

25.     Veradigm records revenues primarily from sales of its proprietary software, either as a direct license sale or under a subscription delivery model, which also serves as the basis for

recurring service contracts for software support and maintenance and certain transaction-related services. In addition, Veradigm records revenue from various other client services, including installation and managed services such as outsourcing, private cloud hosting, and revenue cycle management.

26.     In addition to its revenue, earnings, and margins, Veradigm had two important metrics used by investors to gauge the success of the Company and its client demand growth trends: (i) bookings; and (ii) contract backlog. Bookings reflect the value of executed contracts for software, hardware, other client services, private-cloud hosting, outsourcing, and subscription-based services. Contract backlog represents the value of bookings and support and maintenance contracts that have not yet been recognized as revenue.

27.     Throughout the Class Period, Veradigm emphasized its strong revenue, gross margin, and EBITDA growth to investors. For example, Veradigm shared the following slides during a January 2023 investor presentation:



4874-1625-3850.v1



28.     These and similar statements were materially false and misleading when made because they failed to disclose, *inter alia*, that:

(a)     Veradigm had overstated its historical revenues by at least $20 million;

(b)     Veradigm had artificially inflated its revenue by recording duplicate transactions, among other things, over a more than two-year period;

(c)     Veradigm had artificially inflated its revenue by recording duplicate transactions and through other over a more than two-year period;

(d)     Veradigm had failed to maintain effective internal controls over its financial reporting;

(e)     Veradigm had failed to comply with GAAP regarding appropriate revenue recognition practices; and

(f)     as a result of the foregoing, the Company's financial projections were materially false and misleading and lacked any reasonable basis.

- 9 -

## DEFENDANTS' MATERIALLY FALSE AND MISLEADING STATEMENTS
## AND OMISSIONS ISSUED DURING THE CLASS PERIOD

29.     The Class Period begins on February 26, 2021.  On the prior day, Veradigm issued a press release announcing its fourth quarter and full-year 2020 financial results.[2]  In the release, the Company reported that it had achieved $386 million in revenues and $97 million in adjusted EBITDA for the fourth quarter.  The release also reported that Veradigm had $220 million in bookings in the fourth quarter of 2020 and its contract revenue backlog totaled $4.1 billion as of December 31, 2020.

30.     That same day, Veradigm hosted an earnings call led by defendants Black and Poulton.  In his prepared remarks, defendant Black stated: "The investments we've made in our integrated data and analytics platforms have led to significant new bookings and larger deals . . . ." Defendant Poulton added in pertinent part as follows:

> We generated $220 million of new business bookings and had significant success selling additional products and services to our existing base of hospital clients.  We also had continued strength and competitive wins of new ambulatory clients, and we also benefited from a strong sales quarter at Veradigm, particularly around life science research and clinical data exchange.

31.     On February 26, 2021, Veradigm filed with the SEC its annual report on Form 10-K for the year ended December 31, 2020, which was signed and certified as accurate by defendants Black and Poulton.  The Form 10-K contained the financial information and operational results provided in Veradigm's February 25, 2021 earnings press release.  The Form 10-K also contained signed internal control certifications in which defendants Black and Poulton attested to the following:

> 1.      I have reviewed this Annual Report on Form 10-K of Allscripts Healthcare Solutions, Inc.;

---

[2]      Veradigm's fiscal year ends on December 31 of the calendar year.

2.     Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3.     Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4.     The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

a.     designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

b.     designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

c.     evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

d.     disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5.     The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's Board of Directors (or persons performing the equivalent functions):

4874-1625-3850.v1

a. all significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting, which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

b. any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

32. On April 29, 2021, Veradigm issued a press release announcing its first quarter 2021 financial results. In the release, the Company reported that it had achieved $368 million in revenues and $67 million in adjusted EBITDA for the first quarter. The release also reported that Veradigm had $194 million in bookings in the first quarter and its contract revenue backlog totaled $4 billion as of March 31, 2021.

33. That same day, Veradigm hosted an earnings call led by defendants Black and Poulton. In his prepared remarks, defendant Poulton highlighted the purportedly favorable sales environment for the Company, stating in pertinent part as follows:

> Generated $194 million of new bookings in the quarter, which was up 6% year-over-year, and 7% sequentially, in what is typically a seasonally weak bookings quarter. The first quarter result was higher than what we have reported in any quarter of 2020 on a like-for-like basis. This reflects the continued modest improvement in the overall sales environment . . . .

34. On April 30, 2021, Veradigm filed with the SEC its quarterly report on Form 10-Q for the quarter ended March 31, 2021, which was signed and certified as accurate by defendants Black and Poulton and contained the signed internal control certifications made in connection with the 2020 Form 10-K, as described above at ¶31. The Form 10-Q contained the financial information and operational results provided in Veradigm's April 29, 2021 earnings press release.

35. On August 5, 2021, Veradigm issued a press release announcing its second quarter 2021 financial results. In the release, the Company reported that it had had achieved $374 million in revenues and $69 million in adjusted EBITDA for the second quarter. The release also reported that

- 12 -

Veradigm had $180 million in bookings in the second quarter and its contract revenue backlog totaled $3.9 billion as of June 30, 2021.

36. That same day, Veradigm hosted an earnings call led by defendants Black and Poulton. In his prepared remarks, defendant Poulton emphasized the Company's purported revenue growth, stating in pertinent part as follows:

> We reported $180 million of new bookings in the quarter, which was up 10% year-over-year, as we benefited from demand across our full solutions portfolio.

> \*   \*   \*

> [B]ased on this progress during the quarter, we expect double-digit year-over-year revenue growth for the balance of the year in our Veradigm business.

37. On August 6, 2021, Veradigm filed with the SEC its quarterly report on Form 10-Q for the quarter ended June 30, 2021, which was signed and certified as accurate by defendants Black and Poulton and contained the signed internal control certifications made in connection with the 2020 Form 10-K, as described above at ¶31. The Form 10-Q contained the financial information and operational results provided in Veradigm's August 5, 2021 earnings press release.

38. On November 4, 2021, Veradigm issued a press release announcing its third quarter 2021 financial results. In the release, the Company reported that it had achieved $369 million in revenues and $71 million in adjusted EBITDA for the third quarter. The release also reported that Veradigm had $166 million in bookings in the third quarter and its contract revenue backlog totaled $3.9 billion as of September 30, 2021.

39. That same day, Veradigm hosted an earnings call led by defendants Black and Poulton. In his prepared remarks, defendant Poulton emphasized the Company's purportedly robust growth and earnings trends, stating in pertinent part as follows:

> Veradigm revenue grew 10% year-over-year . . . .

> \*   \*   \*

- 13 -

The strength of our adjusted EBITDA and free cash flow performance during the quarter has led us to further increase our guidance for the full year as follows: We are increasing our 2021 adjusted EBITDA outlook to a range of $275 million to $285 million from our prior outlook of $265 million to $275 million.

40.     On November 5, 2021, Veradigm filed with the SEC its quarterly report on Form 10-Q for the quarter ended September 30, 2021, which was signed and certified as accurate by defendants Black and Poulton and contained the signed internal control certifications made in connection with the 2020 Form 10-K, as described above at ¶31.  The Form 10-Q contained the financial information and operational results provided in Veradigm's November 4, 2021 earnings press release.

41.     On February 24, 2022, Veradigm issued a press release announcing its fourth quarter 2021 and full-year 2021 financial results.  In the release, the Company reported that it had achieved $392 million in revenues and $94 million in adjusted EBITDA for the fourth quarter.  The release also reported that Veradigm had $219 million of bookings in the fourth quarter and its contract revenue backlog totaled $3.8 billion as of December 31, 2021.  In addition, the release stated that Veradigm was on track to achieve consolidated revenue growth of 1% to 2%.

42.     That same day, Veradigm hosted an earnings call led by defendants Black and Poulton.   In his prepared remarks, defendant Poulton highlighted the Company's revenue performance, stating in pertinent part as follows:

[T]he fourth quarter was, by far, our best quarterly performance in years . . . .

. . . [L]et me highlight a few items, starting with our bookings and revenue performance.

We reported $219 million of new bookings in the quarter, which was up 21% year-over-year, and revenue in the fourth quarter was $392 million, which was up 1% year-over-year. . . . . [W]e had a very good revenue mix during the quarter, with strong contribution from software sales, and workflow-linked revenue, both of which are high-margin contributors.

- 14 -

43.     On February 25, 2022, Veradigm filed with the SEC its annual report on Form 10-K for the year ended December 31, 2021, which was signed and certified as accurate by defendants Black and Poulton and contained the signed internal control certifications made in connection with the 2020 Form 10-K, as described above at ¶31. The Form 10-K contained the financial information and operational results provided in Veradigm's February 24, 2022 earnings press release.

44.     On May 5, 2022, Veradigm issued a press release announcing its first quarter 2022 financial results. In the release, the Company reported that it had achieved $136 million in revenues and $35 million in adjusted EBITDA for the first quarter. In addition, the release stated that Veradigm was on track to achieve fiscal 2022 revenue growth of 6% to 7% for the Veradigm segment and Veradigm segment adjusted EBITDA growth of 10% to 15%.

45.     That same day, Veradigm hosted an earnings call led by defendants Black and Poulton. In his prepared remarks, defendant Poulton highlighted the purportedly "strong year-over-year growth in revenue, gross profit and adjusted EBITDA," stating in pertinent part as follows:

> We were pleased with our start to 2022. We saw strong year-over-year growth in revenue, gross profit and adjusted EBITDA as well as an overall improvement in margins, earnings per share and free cash flow. The Veradigm business segment saw a year-over-year revenue growth of 8% during the quarter, which was consistent with our expectations.

46.     During the earnings call, defendant Poulton also represented that the Company was being fully transparent with investors regarding its revenue results, stating in pertinent part as follows:

> [W]e're providing more enhanced disclosures of both revenue and gross profit of our provider versus payer and life science business lines.
>
> Our goal is simple and streamlined transparency . . . .

47.     On May 9, 2022, Veradigm filed with the SEC its quarterly report on Form 10-Q for the quarter ended March 31, 2022, which was signed and certified as accurate by defendants Poulton

- 15 -

and Jones and contained the signed internal control certifications made in connection with the 2020 Form 10-K, as described above at ¶31. The Form 10-Q contained the financial information and operational results provided in Veradigm's May 5, 2022 earnings press release.

48. On August 4, 2022, Veradigm issued a press release announcing its second quarter 2022 financial results. In the release, the Company reported that it had achieved $151 million in consolidated revenues, including $145 million of revenues in its Veradigm business segment, and $39 million in consolidated adjusted EBITDA, including $35 million in its Veradigm business segment. The release also reported that Veradigm had $107 million in bookings for the second quarter.

49. That same day, Veradigm hosted an earnings call led by defendants Poulton and Jones. In her prepared remarks, defendant Jones highlighted the Company's purportedly favorable growth trends, stating in pertinent part as follows:

> We're again pleased with our financial performance in the second quarter. We saw a year-over-year growth in bookings, revenue, gross profit and adjusted EBITDA as well as an overall improvement in margin consistent with our expectations.
>
> The Veradigm business segment saw a year-over-year revenue growth of 8% during the quarter. And on a consolidated basis, revenue growth was 7%.

50. On August 8, 2022, Veradigm filed with the SEC its quarterly report on Form 10-Q for the quarter ended June 30, 2022, which was signed and certified as accurate by defendants Poulton and Jones and contained the signed internal control certifications made in connection with the 2020 Form 10-K, as described above at ¶31. The Form 10-Q contained the financial information and operational results provided in Veradigm's August 4, 2022 earnings press release.

51. On November 3, 2022, Veradigm issued a press release announcing its third quarter 2021 financial results. In the release, the Company reported that it had achieved $152 million in consolidated revenues, including $145 million of revenues in its Veradigm business segment, and

$43 million in consolidated adjusted EBITDA, including $44 million in its Veradigm business segment. The release also reported that Veradigm was affirming its guidance for fiscal 2022 revenue growth of 6% to 7% for the Veradigm segment and Veradigm segment adjusted EBITDA growth of 10% to 15%.

52.     That same day, Veradigm hosted an earnings call led by defendants Poulton and Jones. In her prepared remarks, defendant Jones highlighted the Company's purportedly favorable growth trends, stating in pertinent part as follows:

> We saw nice year-over-year growth in revenue, gross profit, adjusted EBITDA and non-GAAP earnings per share, as well as an overall of improvement in margin consistent with our expectations. The Veradigm business segment saw year-over-year revenue growth of 6% during the quarter. And on a consolidated basis, revenue growth was 5%.

53.     On November 7, 2022, Veradigm filed with the SEC its quarterly report on Form 10-Q for the quarter ended September 30, 2022, which was signed and certified as accurate by defendants Poulton and Jones and contained the signed internal control certifications made in connection with the 2020 Form 10-K, as described above at ¶31. The Form 10-Q contained the financial information and operational results provided in Veradigm's November 3, 2022 earnings press release.

54.     The statements referenced in ¶¶29-53 were materially false and/or misleading when made because they failed to disclose the following adverse facts pertaining to the Company's reported financial results, which were known to or recklessly disregarded by defendants as follows:

> (a)     that Veradigm had overstated its historical revenues by at least $20 million;

> (b)     that Veradigm had artificially inflated its revenue by recording duplicate transactions, among other things, over a more than two-year period;

(c)    that, as a result of (a)-(b) above, Veradigm had artificially inflated its earnings and margins and materially misrepresented demand for the Company's products and services during the Class Period;

(d)    that Veradigm had failed to maintain effective internal controls over its financial reporting;

(e)    that Veradigm had failed to comply with GAAP regarding appropriate revenue recognition practices; and

(f)    that, as a result of (a)-(e) above, the Company's financial projections were materially false and misleading and lacked any reasonable basis.

55.    In addition, throughout the Class Period, Veradigm's periodic financial filings were required to disclose the adverse facts and circumstances detailed above under applicable SEC rules and regulations. Specifically, Item 303 of SEC Regulation S-K, 17 C.F.R. §229.303(b)(2)(ii) ("Item 303"), required the Company to "[d]escribe any known trends or uncertainties that have had or that are reasonably likely to have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations." Moreover, Item 105 of Regulation S-K, 17 C.F.R. §229.105 ("Item 105"), required disclosure of "the material factors that ma[d]e an investment in [Veradigm] speculative or risky" and an explanation of "how [the] risk affecte[d] [Veradigm]." Defendants' failure to disclose Veradigm's historical misstatement of its financial results and to maintain effective internal controls over the Company's financial reporting violated Item 303 because these activities represented known trends and uncertainties that were likely to have a material unfavorable impact on the Company's business and financial results. Furthermore, defendants' failure violated Item 105, because these adverse facts created significant risks that were not disclosed even though they were some of the most significant facts that made an investment in Veradigm speculative or risky.

- 18 -

56.     On February 28, 2023, Veradigm issued a press release stating that, in conjunction with its year-end audit procedures, it had "detected certain internal control failures related to revenue recognition practices that had occurred over the prior six quarters, resulting in a misstatement of reported revenues during those periods."   The Company further disclosed that the revenue misstatements were the result of recording duplicate sales transactions that had caused revenue to be overstated by at least $20 million from the third quarter of 2021 through the fourth quarter of 2022. The press release described Veradigm's historical misstatement of its financial results in pertinent part as follows:

> The internal control failures primarily stem from a software tool the Company implemented in the 3rd quarter of 2021 to assist it with compliance with FASB's rule ASC 606.  While extensive testing was conducted on the tool when implemented in 2021, testing during the current period highlighted some system generated ***duplicate transactions and other errors*** impacting the results the Company was receiving from the tool.  The Company has engaged external advisory services to fully quantify the past impact, review system changes, and recommend compensating controls to prevent and detect similar potential errors in the future.

57.     As a result of the accounting errors, Veradigm slashed its previously disclosed fiscal 2023 revenue guidance by $15 million and its non-GAAP earnings per share guidance by $0.10 per share.  Finally, Veradigm announced that its previously scheduled fourth quarter 2022 earnings release and the filing of its fiscal 2022 Form 10-K would be delayed until its review of the accounting errors and internal control failures was completed.

58.     On this news, the price of Veradigm stock closed down nearly 13% on March 1, 2023, to $14.49 per share on abnormally high trading volume of over 3.3 million shares traded. However, because defendants failed to disclose the full truth and continued to make material misrepresentations, the price of Veradigm stock remained artificially inflated.

59.     Less than one month later, on March 22, 2023, Veradigm issued a press release announcing that the Company had received a notice from the Nasdaq stock exchange that it was not

- 19 -

in compliance with the exchange's listing requirements. Veradigm further disclosed that the size and scope of the revenue misstatements were significantly greater than previously disclosed. Instead, the Company revealed that each of Veradigm's quarterly filings in fiscal 2021 and fiscal 2022 could no longer be relied upon, and would need to be restated. Consequently, the revenue errors and internal control failures were not limited to a software implementation in third quarter 2021. Veradigm updated its estimate of the amount of its misstatement of historical revenue, stating that, in total, revenue had been overstated by approximately $40 million during fiscal 2021 and fiscal 2022. In addition, Veradigm slashed the low end of its previously disclosed fiscal 2023 revenue guidance range by another $10 million. The press release described the material weaknesses in Veradigm's internal controls in pertinent part as follows:

> The Company expects to report one or more material weaknesses as of December 31, 2022, as well as its related remediation efforts, in the Form 10-K related to the recognition of revenue and certain other non-routine review controls. As a result, the Company concluded that its disclosure controls and procedures were not effective as of December 31, 2022 and that its internal control over financial reporting was not effective as of December 31, 2022.

60. On May 19, 2023, Veradigm issued a press release announcing it was not in compliance with Nasdaq Listing Rule 5250(c)(1) because the Company had not filed with the SEC its fiscal 2022 Annual Report on Form 10-K or its Q1 2023 Quarterly Report on Form 10-Q. Veradigm stated that its accounting review was ongoing and that the Company planned to file its fiscal 2022 Form 10-K on or around June 14, 2023.

61. On June 13, 2023, Veradigm issued a press release announcing that it had identified additional revenue misstatements dating back to fiscal 2020. The press release stated in pertinent part as follows:

> As previously disclosed, the Company has been unable to file its Form 10-K and the Form 10-Q because of internal control failures that primarily stem from accounting processes and a software tool implemented by the Company in order to comply with the requirements of FASB's rule ASC 606. The Company also

- 20 -

previously disclosed that it expected to restate previously reported results for 2021 and 2022, and the cumulative impact was expected to be a reduction of revenue from continuing operations of approximately $40 million . . . .

. . . [A] portion of this impact is expected to relate to 2020 . . . .

62.     The press release further revealed that Veradigm's internal review regarding the nature and the extent of the accounting and internal control errors was taking longer than previously revealed, and the Company's independent auditors need more time to complete their audit procedures. As such, the Company disclosed it would not meet its previously disclosed deadline to file its Form 10-K on June 14, 2023, and stated that it expected to file its fiscal 2022 Form 10-K and Q1 2023 Form 10-Q on or prior to Nasdaq's September 18, 2023 deadline.

63.     On this news, the price of Veradigm stock closed down more than 4% on June 14, 2023 to $11.49 per share on heavy trading volume of over 1 million shares traded.

64.     On August 10, 2023, Veradigm filed with the SEC on Form NT 10-Q a notice that it was still unable to file its periodic financial reports as a result of the Company's historical misstatements of its financial results.

65.     On August 18, 2023, Veradigm issued a press release announcing that it had received an additional notice of non-compliance with Nasdaq's listing requirements and that it was unsure whether it could regain compliance by the September 18, 2023 deadline.

66.     On September 18, 2023, Veradigm issued a press release announcing that it was again revising the amount of the expected restatement to a $20 million cumulative impact for the periods of fiscal 2020 through 2022. The Company stated that it did not expect to file its belated periodic SEC filings within the 180-day Nasdaq exception period and as a result expected to receive a delisting notice from the exchange. The Company stated that the reason for the extended delay "primarily resulted from the need to build a new supplemental revenue system tool and the extensive

- 21 -

manual work to aggregate and map the Company's historical transaction data into the new system tool."

67. On September 22, 2023, Veradigm issued a press release disclosing that it had received a delisting notice from Nasdaq due to its failure to regain compliance with the exchange rules and planned to contest the delisting decision by requesting a hearing with the exchange. Ultimately, Nasdaq would allow Veradigm to temporarily and conditionally remain listed and extended the time for the Company to regain compliance to on or before February 27, 2024.

68. On December 8, 2023, Veradigm issued a press release stating that both defendants Poulton and Jones had been forced to resign from the Company at the request of the Board. The release stated that the resignations were the direct "result from the Audit Committee's previously disclosed, ongoing independent investigation, . . . [that] relates to the Company's financial reporting and internal controls over financial reporting and disclosure controls." The release also suggested that the scope of the historical misstatements of Veradigm's financial reporting may be larger than previously disclosed, stating: "The potential impact, if any, to the financial statements for previously reported periods as a result of the independent investigation is under review by the new leadership team."

69. On this news, the price of Veradigm stock closed down more than 20% on December 8, 2023 to $10.07 per share on heavy trading volume of nearly 9 million shares traded.

70. As of the filing of this complaint, Veradigm has still not remediated the material weakness in its financial controls, rectified its misstatement of its prior financial results, regained compliance with Nasdaq listing requirements, or filed its overdue periodic filings with the SEC. By the end of the Class Period, the price of Veradigm stock had fallen to a low of less than $10 per share, less than *half* the Class Period high, inflicting substantial financial losses and economic damages on plaintiff and the Class.

4874-1625-3850.v1

## ADDITIONAL SCIENTER ALLEGATIONS

71.     As alleged herein, defendants acted with scienter in that defendants knew, or recklessly disregarded, that the public documents and statements they issued and disseminated to the investing public in the name of the Company, or in their own name, during the Class Period were materially false and misleading.  Defendants knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements and documents as primary violations of the federal securities laws.  Defendants, by virtue of their receipt of information reflecting the true facts regarding Veradigm, and their control over and/or receipt and/or modification of Veradigm's materially false and misleading statements, were active and culpable participants in the fraudulent scheme alleged herein.

72.     Defendants knew and recklessly disregarded the false and misleading nature of the information they caused to be disseminated to the investing public.  The Individual Defendants, because of their positions with Veradigm, controlled the contents of Veradigm's public statements during the Class Period.  The Individual Defendants were each provided with or had access to the information alleged herein to be false and misleading prior to or shortly after its issuance and had the ability and opportunity to prevent its issuance or cause it to be corrected.  Because of their positions and access to material, non-public information, the Individual Defendants knew or recklessly disregarded that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations that were being made were false and misleading.

73.     Throughout the Class Period, the Individual Defendants held themselves out as the persons most knowledgeable about the Company's revenue, earnings, and margin trends and made repeated representations to investors in SEC filings, conference calls, and Company-issued press releases regarding these topics based on this purported knowledge.  Furthermore, the topics involved

- 23 -

the Company's most important financial metrics which were closely watched by the Individual Defendants, and the Individual Defendants signed certifications personally attesting that the information misrepresented to the market, as detailed herein, was true, accurate, and free from fraud and that Veradigm maintained effective controls over its financial reporting

74.     In addition, defendants would have conducted substantial due diligence and review of the Company's historical results and internal controls and reporting procedures in connection with the sale of Veradigm's Hospitals and Large Physician Practices segment announced during the Class Period.  On March 2, 2022, Veradigm announced it was selling its Hospitals and Large Physician Practices business segment to Constellation Software Inc. for $700 million.  The sale closed in May 2022 and involved assets impacted by the fraudulent scheme detailed herein.  As defendants have acknowledged, the misstatement of historical financial results included the Company's discontinued operations and thus the Hospitals and Large Physician Practices segment.  The overstatement of this segments' historical financial results also allowed defendants to get a better price for the sale of these assets than would have been possible had the truth been revealed.

75.     Defendants also had the motive and opportunity to commit fraud.  For example, Black had the motive and opportunity to commit fraud, selling $12.8 million worth of Veradigm shares between March 15, 2021 and June 10, 2022 at prices as high as $21.87 per share.  Similarly, defendant Poulton sold $3.7 million worth of his Veradigm shares between May 4, 2021 and February 16, 2023 at prices as high as $20.83 per share.  Defendant Jones, who was Veradigm's CFO for only a short portion of the Class Period, sold over $185,000 worth of Veradigm shares between August 15, 2022 and September 13, 2022.  The sales by all of the Individual Defendants were highly suspicious in both timing and amount and out of line with these executives' prior trading practices.  Furthermore, the abrupt departure of defendant Black, Veradigm's long-running CEO, in

May 2022, shortly before the revelation of the adverse facts detailed herein and at the conclusion of his insider selling spree, bolsters an already compelling inference of scienter.

## LOSS CAUSATION/ECONOMIC LOSS

76.     During the Class Period, as detailed herein, defendants made false and misleading statements and engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of Veradigm common stock and operated as a fraud or deceit on Class Period purchasers of Veradigm common stock by misrepresenting the value of the Company's business and prospects by overstating revenue, profit, bookings, and backlog.  As defendants' misrepresentations and fraudulent conduct became apparent to the market, the price of Veradigm stock fell precipitously as the prior artificial inflation came out of the stock's price.  As a result of their purchases of Veradigm common stock during the Class Period, plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

## NO SAFE HARBOR

77.     Veradigm's "Safe Harbor" warnings accompanying its reportedly forward-looking statements ("FLS") issued during the Class Period were ineffective to shield those statements from liability.  To the extent that projected revenues and earnings were included in the Company's financial reports prepared in accordance with GAAP they are excluded from the protection of the statutory Safe Harbor.  15 U.S.C. §78u-5(b)(2)(A).

78.     Defendants are also liable for any false or misleading FLS pleaded because, at the time each FLS was made, the speaker knew the FLS was false or misleading and the FLS was authorized and/or approved by an executive officer of Veradigm who knew that the FLS was false. None of the historic or present tense statements made by defendants were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic

- 25 -

performance when made, nor were any of the projections or forecasts made by defendants expressly related to or stated to be dependent on those historic or present tense statements when made.

## APPLICATION OF PRESUMPTION OF RELIANCE

79.     The market for Veradigm common stock was open, well developed, and efficient at all relevant times.  As a result of the materially false and misleading statements and omissions set forth above, Veradigm common stock traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased Veradigm common stock relying upon the integrity of the market price of Veradigm common stock and market information relating to Veradigm, and have been damaged thereby.

80.     At all relevant times, the market for Veradigm common stock was efficient for the following reasons, among others:

(a)     Veradigm common stock met the requirements for listing and was listed and actively traded on the Nasdaq, a highly efficient and automated market;

(b)     according to the Company's Form 10-Q filed on November 7, 2022, the Company had over 279 million shares of common stock outstanding as of September 30, 2022, demonstrating a very active and broad market for Veradigm common stock;

(c)     as a regulated issuer, Veradigm filed periodic public reports with the SEC;

(d)     Veradigm regularly communicated with public investors via established market communication mechanisms, including the regular dissemination of press releases on national circuits of major newswire services, the Internet, and other wide-ranging public disclosures; and

(e)     unexpected material news about Veradigm was rapidly reflected in and incorporated into the Company's stock price during the Class Period.

81.     As a result of the foregoing, the market for Veradigm common stock promptly digested current information regarding Veradigm from publicly available sources and reflected such information in Veradigm's stock price.  Under these circumstances, all purchasers of Veradigm common stock during the Class Period suffered similar injury through their purchase of Veradigm common stock at artificially inflated prices and a presumption of reliance applies.

82.     A presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens v. United States*, 406 U.S. 128 (1972), because plaintiff's claims are based, in significant part, on defendants' material omissions.  Because this action involves defendants' failure to disclose material adverse information regarding Veradigm's business and operations, positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of defendants' material misstatements and omissions set forth above, that requirement is satisfied here.

## CLASS ACTION ALLEGATIONS

83.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all purchasers of Veradigm common stock during the Class Period (the "Class").  Excluded from the Class are defendants, the officers and directors of the Company, at all relevant times, members of their immediate families, and their legal representatives, heirs, successors, or assigns, and any entity in which defendants have or had a controlling interest.

84.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Veradigm common stock was actively traded on the Nasdaq.  While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds or thousands

- 27 -

of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Veradigm or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

85.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

86.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

87.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     whether the Exchange Act was violated by defendants as alleged herein;

(b)     whether statements made by defendants misrepresented material facts about the business, operations, and financial results of Veradigm; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

88.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

**COUNT I**

**For Violation of §10(b) of the Exchange Act and Rule 10b-5**
**Against All Defendants**

89.     Plaintiff incorporates ¶¶1-88 by reference.

90.     During the Class Period, defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

91.     Defendants violated §10(b) of the Exchange Act and Rule 10b-5 in that they:

          (a)     employed devices, schemes, and artifices to defraud;

          (b)     made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

          (c)     engaged in acts, practices, and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Veradigm common stock during the Class Period.

92.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Veradigm common stock.  Plaintiff and the Class would not have purchased Veradigm common stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by defendants' misleading statements.

93.     By virtue of the foregoing, defendants have violated §10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

4874-1625-3850.v1

94.     As a direct and proximate result of defendants' wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their purchases of Veradigm common stock during the Class Period.

## COUNT II

### For Violations of §20(a) of the Exchange Act
### Against All Defendants

95.     Plaintiff incorporates ¶¶1-94 by reference.

96.     During the Class Period, the Individual Defendants acted as controlling persons of Veradigm within the meaning of §20(a) of the Exchange Act.  By virtue of their share ownership, and executive and Board positions, as alleged above, the Individual Defendants had the power to influence and control and did, directly or indirectly, influence and control the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends were false and misleading as detailed herein.

97.     The Individual Defendants were provided with or had unlimited access to the Company's internal reports, press releases, public filings, and other statements alleged by plaintiff to be misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.  In particular, the Individual Defendants had direct involvement in and responsibility over the day-to-day operations of the Company and, therefore, are presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein.

98.     The Company controlled the Individual Defendants and all of its employees.

99.     By reason of such wrongful conduct, defendants are liable pursuant to §20(a) of the Exchange Act.

4874-1625-3850.v1

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for relief and judgment as follows:

A.      Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

B.      Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.      Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.      Awarding such equitable/injunctive or other relief as deemed appropriate by the Court.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED:  January 5, 2024

ROBBINS GELLER RUDMAN
 & DOWD LLP
BRIAN E. COCHRAN (IL Bar # 6329016)


                        /s/ Brian E. Cochran
BRIAN E. COCHRAN

200 South Wacker Drive, 31st Floor
Chicago, IL  60606
Telephone:  630/696-4107
bcochran@rgrdlaw.com

- 31 -

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com

JOHNSON FISTEL, LLP
MICHAEL I. FISTEL, JR.
40 Powder Springs Street
Marietta, GA  30064
Telephone:  470/632-6000
770/200-3101 (fax)
michaelf@johnsonfistel.com

Attorneys for Plaintiff

DECLARATION OF SERVICE BY UPS DELIVERY AND EMAIL

I, the undersigned, declare:

1. That declarant is and was, at all times herein mentioned, a citizen of the United States and a resident of the County of San Diego, over the age of 18 years, and not a party to or interested party in the within action; that declarant's business address is 655 West Broadway, Suite 1900, San Diego, California 92101.

2. That on January 5, 2024, declarant served by UPS, next day delivery, and via email the **AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** to the parties listed below:

>Kristen R. Seeger
>SIDLEY AUSTIN LLP
>One South Dearborn
>Chicago, IL 60603
>kseeger@sidley.com

I declare under penalty of perjury that the foregoing is true and correct. Executed on January 5, 2024, at San Diego, California.

_____
SUSAN M. WILLIAMS

4874-1625-3850.v1