**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN M. ERWIN, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | Case No. 1:23-cv-16205 |
| Plaintiff, | ) ) | CLASS ACTION |
| vs. | ) ) | Hon. Lindsey C. Jenkins |
| VERADIGM INC., *et al.*, | ) ) ) | |
| Defendants. | ) ) ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**
**OF THE MOTION OF ALAMEDA COUNTY EMPLOYEES' RETIREMENT**
**ASSOCIATION FOR APPOINTMENT AS LEAD PLAINTIFF AND**
**APPROVAL OF SELECTION OF LEAD COUNSEL AND LIAISON COUNSEL**

**TABLE OF CONTENTS**

I.      PRELIMINARY STATEMENT ............................................................................................ 1

II.     SUMMARY OF FACTUAL ALLEGATIONS ................................................................... 2

III.    ARGUMENT ...................................................................................................................... 4

        A.      ACERA Should Be Appointed Lead Plaintiff............................................................. 4

                1.      ACERA Timely Moved for Appointment as Lead Plaintiff........................ 5

                2.      ACERA Has the Largest Financial Interest in the Action........................... 5

                3.      ACERA Satisfies Rule 23's Typicality and Adequacy Requirements. ....... 6

                4.      ACERA is Precisely the Type of Lead Plaintiff Congress Envisioned
                        in Enacting the PSLRA................................................................................. 8

        B.      ACERA's Selection of Lead Counsel and Liaison Counsel Should Be
                Approved....................................................................................................................... 9

II.     CONCLUSION .................................................................................................................11

## TABLE OF AUTHORITIES

**Cases**

*City of Sterling Heights Gen. Empls. Ret. Sys. v. Hospira, Inc.*,
  No. 11-8332, 2012 WL 1339678 (N.D. Ill. Apr. 18, 2012) .................................................. 5, 6, 7

*Colwell v. Exicure Inc.*,
  No. 21-cv-06637, 2023 WL 2572454 (N.D. Ill. Mar. 20, 2023) ........................................... 6, 7

*Greebel v. FTP Software, Inc.*,
  939 F. Supp. 57 (D. Mass. 1996) ........................................................................................... 5

*Hedick v. Kraft Heinz Co.*,
  No. 19-cv-1339, 2019 WL 4958238 (N.D. Ill. Oct. 8, 2019) ................................................ 7

*In re Cavanaugh*,
  306 F.3d 726 (9th Cir. 2002) .................................................................................................. 6

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) ................................................................................................. 8, 9

*Keele v. Wexler*,
  149 F.3d 589 (7th Cir. 1998) .................................................................................................. 7

*Lloyd v. CVB Fin. Corp.*,
  No. CV 10-06256 MMM (PJWx), 2011 WL 13128303 (C.D. Cal. Jan. 21, 2011) ................... 9

*Takara Tr. v. Molex Inc.*,
  229 F.R.D. 577 (N.D. Ill. 2005) .......................................................................................... 6, 7

**Statutes**

15 U.S.C. § 78j(b) ....................................................................................................................... 1, 2

15 U.S.C. § 78t(a) ........................................................................................................................ 1, 2

15 U.S.C. § 78u-4(a)(3)(A) .............................................................................................................. 4

15 U.S.C. § 78u-4(a)(3)(A)(i) .......................................................................................................... 4

15 U.S.C. § 78u-4(a)(3)(B) ........................................................................................................ 1, 4, 5

15 U.S.C. § 78u-4(a)(3)(B)(iii) ....................................................................................................... 5

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ................................................................................................ 1, 5

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb) ............................................................................................. 6

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc) ........................................................................ 6

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) ............................................................................ 6

15 U.S.C. § 78u-4(a)(3)(B)(v) ............................................................................ 2, 9

17 C.F.R. § 240.10b-5 .......................................................................................... 1, 2

**Rules**

Fed. R. Civ. P. 23 ......................................................................................... passim

Fed. R. Civ. P. 23(a)(3) ........................................................................................ 2, 6

Fed. R. Civ. P. 23(a)(4) ........................................................................................ 2, 7

**Other Authorities**

H.R. Conf. Rep. No. 104-369(Conf. Rep.) (1995), *reprinted in* 1995 U.S.C.C.A.N. 730
   (1995) ................................................................................................................. 8, 9

Manual for Complex Litig. (Fourth) § 10.221 .......................................................... 10

S. Rep. No. 104-98, at *11 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 690 (1995) .................. 8

Alameda County Employees' Retirement Association ("ACERA") respectfully submits this memorandum in support of its motion (1) to be appointed as Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); and (2) for approval of its selection of Berman Tabacco as Lead Counsel and Cohen Milstein Sellers & Toll, PLLC ("Cohen Milstein") as Liaison Counsel for the proposed class.

## I.  **PRELIMINARY STATEMENT**

This is a securities class action on behalf of all purchasers of the common stock of Veradigm Inc. ("Veradigm," or the "Company") between February 26, 2021 and December 7, 2023, inclusive (the "Class Period"), as set forth in the amended complaint (ECF No. 10) ("Amended Complaint" or "Am. Compl.").  The action is brought against Veradigm and its current and former officers, Paul M. Black ("Black"), Veradigm's Chief Executive Officer ("CEO") from the beginning of the Class Period to May 5, 2022; Richard J. Poulton  ("Poulton"), Veradigm's President and Chief Financial Officer ("CFO") from the start of the Class Period through May 6, 2022, and Veradigm's CEO from May 6, 2022 through the end of the Class Period; and Leah S. Jones ("Jones"), Veradigm's CFO and principal accounting officer from May 6, 2022 through the end of the Class Period (collectively, "Defendants").  The Amended Complaint alleges violations of Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), as well as Rule 10b-5 promulgated by the U.S. Securities and Exchange Commission ("SEC"), 17 C.F.R. § 240.10b-5.

The PSLRA provides that the Court should appoint as Lead Plaintiff the movant that possesses the largest financial interest in the outcome of the litigation and satisfies the relevant requirements of Federal Rule of Civil Procedure 23 ("Rule 23").  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

1

ACERA is the appropriate choice for Lead Plaintiff because it (1) suffered losses of $794,821 on its investments in Veradigm common stock during the Class Period and, to the best of its knowledge, has the largest financial interest in the relief sought by the proposed class; and (2) it satisfies the typicality and adequacy requirements of Rule 23(a)(3) and (a)(4). Accordingly, the Court should appoint ACERA as Lead Plaintiff.

The Court should also approve ACERA's selection of Berman Tabacco as Lead Counsel and Cohen Milstein as Liaison Counsel for the proposed class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). Berman Tabacco has extensive experience in representing investors in securities class actions as well as other securities and financial fraud litigation and has recovered billions of dollars on behalf of investors. Cohen Milstein also has significant experience and a highly successful track record in securities and other complex litigation, and has an office in this District. ACERA's motion should be granted.

## II.    SUMMARY OF FACTUAL ALLEGATIONS

Veradigm, a Delaware corporation with headquarters in Chicago, Illinois, is a healthcare technology company that provides electronic health records ("EHR"), financial management, population health management and other services to healthcare organizations in the United States. Am. Compl. ¶ 2.

The pending putative class action case brought under Sections 10(b) and 20(a) of the Exchange Act, as well as SEC Rule 10b-5, alleges that the Company made materially false and misleading statements during the Class Period regarding its revenues, gross margins and earnings growth. Am. Compl. ¶ 3. Specifically, the Amended Complaint alleges that the Company failed to inform investors during the Class Period that:

(a)    Veradigm had overstated its historical revenues by at least $20 million;

2

(b)     Veradigm had artificially inflated its revenue by recording duplicate transactions, among other things, over a more than two-year period;

(c)     Veradigm had artificially inflated its earnings and margins and materially misrepresented demand for the Company's products and services during the Class Period;

(d)     Veradigm had failed to maintain effective internal controls over its financial reporting;

(e)     Veradigm had failed to comply with Generally Accepted Accounting Principles ("GAAP") regarding appropriate revenue recognition practices; and

(f)     that as a result of the foregoing, the Company's financial projections were materially false and misleading and lacked any reasonable basis.

*Id.*

On February 28, 2023, the Company disclosed that it had overstated historical revenues by at least $20 million by recording "duplicate transactions and other errors" since the third quarter of 2021. Am. Compl. ¶ 4. As a result, Veradigm slashed its previously provided revenue guidance by $15 million and its non-GAAP earnings per share guidance by $0.10 per share. *Id.* The Company further announced that it would delay filing its annual report on Form 10-K with the SEC until its internal investigation of the accounting issue and internal control failures was completed. *Id.* On this news, shares of Veradigm fell 13% or $2.12 per share, wiping out $230 million in shareholder value. *See id.*

Then, on March 22, 2023, the Company disclosed that it would be restating its financial results beginnnig in the *first quarter of 2021* because it had overstated revenue by approximately $40 million due to "certain internal control failures" relating to the Company's revenue recognition software. Am. Compl. ¶ 5.

Just two months later, on May 19, 2023, the Company also reported receiving a notice of delisting from the NASDAQ due to its failure to timely file its annual report. Am. Compl. ¶ 6.

On June 13, 2023, after the market close, the Company stated that its internal review had concluded on the nature and extent of the accounting and internal control errors impacting the reporting periods through the end of 2022, that the Company's independent auditors needed more time to complete their audit procedures, and the Company consequently would not file its Form 10-K on or around June 14, 2023. Am. Compl. ¶ 7. On this news, shares fell 4.4% or $0.53 per share. *See id*.

On December 8, 2023, before the market open, the Company stunned the market when it announced that its CEO, Poulton, and its CFO, Jones, were ***fired based on findings from the Board's internal investigation***. On this news, shares of Veradigm collapsed $2.52 or 20%, wiping out over $270 million in shareholder value. Am. Compl. ¶ 12.

## III. ARGUMENT

### A. ACERA Should Be Appointed Lead Plaintiff

The PSLRA sets forth a two-step procedure that governs the appointment of a lead plaintiff in a proposed class action arising under the Exchange Act. 15 U.S.C. §§ 78u-4(a)(3)(A) and (a)(3)(B).

*First*, the plaintiff who files the initial action must publish a notice to the class within 20 days of filing the action, informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i). Within 60 days after publication of the notice, any person or group of persons who are members of the proposed class can apply to the court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action. 15 U.S.C. §§ 78u-4(a)(3)(A) and (a)(3)(B).

*Second*, the PSLRA provides that within 90 days after publication of the notice, the court must appoint as lead plaintiff the member or members of the class that the court determines are

4

most capable of adequately representing the interests of class members. 15 U.S.C. § 78u-4(a)(3)(B). The PSLRA establishes a "presumption" that "the most adequate plaintiff" consists of "the person or group of persons" that:

(aa)     has either filed the complaint or made a motion in response to a notice . . . ;

(bb)     in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc)     otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii). ACERA satisfies each of those prerequisites.

### 1.     ACERA Timely Moved for Appointment as Lead Plaintiff.

The plaintiff in the first-filed action published a notice on November 22, 2023 on *Globe Newswire*. *See* Declaration of Nicole Lavallee ("Lavallee Decl."), filed herewith, Ex. 1 (notice). The notice advised that all class members who are interested in moving for the appointment of Lead Plaintiff must do so by January 22, 2024. Courts have recognized national news wire services as suitable vehicles for meeting the PSLRA's requirement that notice be published "in a widely circulated national business-oriented publication or wire service." *See, e.g.*, *Greebel v. FTP Software, Inc.*, 939 F. Supp. 57, 62, 64 (D. Mass. 1996). Accordingly, ACERA's motion, filed on January 22, 2024, is timely.

### 2.     ACERA Has the Largest Financial Interest in the Action.

As noted above, the PSLRA establishes a rebuttable presumption that "the most adequate plaintiff" is the "person" or "group of persons" that "has the largest financial interest in the relief sought by the class," and satisfies Rule 23's requirements. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also City of Sterling Heights Gen. Empls. Ret. Sys. v. Hospira, Inc.*, No. 11-8332, 2012 WL 1339678, at *3 (N.D. Ill. Apr. 18, 2012). This presumption can only be rebutted by proof that the person or group with the largest financial interest "will not fairly and adequately protect the

interests of the class" or is "subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

During the Class Period, ACERA (1) purchased a total of 141,343 shares of Veradigm common stock; (2) purchased a net amount of 135,378 shares of Veradigm common stock; (3) expended a net amount of $2,159,590 on its purchases of Veradigm common stock; and (4) suffered a loss of $794,821 on a Last-In-First-Out ("LIFO") basis—the methodology typically applied in this District—as a result of the disclosure of the fraud. *See Hospira*, 2012 WL 1339678, at *5 ("courts in this District and others have preferred LIFO over FIFO as the appropriate method to calculate losses for purposes of appointment [of] a lead plaintiff in a securities fraud case"); Lavallee Decl. Exs. 2 & 3 (attaching ACERA's certification and a chart analyzing their losses). To the best of its knowledge, ACERA possessed the largest financial interest in the outcome of this litigation and is therefore presumptively "the most adequate" plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

### 3. ACERA Satisfies Rule 23's Typicality and Adequacy Requirements.

In addition to satisfying the PSLRA's prerequisites, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). This inquiry should, however, be confined to determining whether the movant has made a *prima facie* showing of typicality and adequacy. *See Colwell v. Exicure Inc.*, No. 21-cv-06637, 2023 WL 2572454, at *2 (N.D. Ill. Mar. 20, 2023); *Takara Tr. v. Molex Inc.*, 229 F.R.D. 577, 580 (N.D. Ill. 2005); *In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002). ACERA readily meets this threshold.

ACERA's claims are typical of those of other class members. Rule 23(a)(3)'s typicality requirement is satisfied when the putative lead plaintiff's claims "arise[] from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her

6

claims are based on the same legal theory." *Hedick v. Kraft Heinz Co.*, No. 19-cv-1339, 2019 WL 4958238, at *9 (N.D. Ill. Oct. 8, 2019) (quoting *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998)); *see also Hospira*, 2012 WL 1339678, at *8; *Takara Tr.*, 229 F.R.D. at 580 (finding putative lead plaintiff's claims typical because, like other class members, it "claim[ed] it sustained losses from [defendant's] misrepresentations and inflations of stock value, and these claims arise under the same theory that [defendant's] course of conduct violated federal securities laws").

ACERA, like all other class members, purchased Veradigm common stock during the Class Period at prices that were artificially inflated by Defendants' wrongful conduct, and suffered damages when facts concealed by Defendants' misrepresentations ultimately were revealed. ACERA's claims are therefore typical of the claims of other class members, as they all arise out of the same course of events and are based on the same legal theories.

ACERA will fairly and adequately represent the interests of the class. Rule 23(a)(4) requires that a representative party also demonstrate it will "fairly and adequately protect the interests of the class." A representative party is "adequate" if "(1) its claims are not antagonistic or in conflict with those of the class; (2) it has sufficient interest in the outcome of the case to ensure vigorous advocacy; and (3) it is represented by competent, experienced counsel who [will] be able to prosecute the litigation vigorously." *Hospira*, 2012 WL 1339678, at *9 (citation omitted). ACERA has made a sufficient showing that they are adequate under Rule 23.

*First*, ACERA's interests do not conflict with those of other class members. Indeed, these respective interests are closely aligned because each class member allegedly purchased Veradigm common stock in reliance on Defendants' misstatements or omissions. *See, e.g.*, *Colwell*, 2023 WL 2572454, at *2. There is also no evidence that ACERA's motion is collusive.

7

*Second*, as detailed above, ACERA has a significant interest in the outcome of this case. Having suffered approximately $794,821 in losses due to Defendants' misconduct, ACERA is strongly motivated to pursue these claims vigorously on behalf of itself and other defrauded investors. Further, ACERA has experience leading securities class actions, and has proven it is precisely the type of institutional investor the PSLRA contemplates serving as lead plaintiff. *See Hayden, et al. v. Portola Pharmaceuticals, Inc., et al.*, No. 3:20-cv-00367-VC (N.D. Cal.).

*Third*, as further demonstrated below, the law firm that ACERA has selected as proposed Lead Counsel (Berman Tabacco) is highly qualified and prepared to vigorously prosecute the litigation on behalf of the class.

ACERA has therefore made the requisite *prima facie* showing that it will fairly and adequately represent the interests of the class.

### 4. ACERA is Precisely the Type of Lead Plaintiff Congress Envisioned in Enacting the PSLRA

In addition to satisfying the PSLRA's lead plaintiff provisions and the requirements of Rule 23, ACERA is the paradigmatic lead plaintiff envisioned by Congress in its enactment of the PSLRA—a sophisticated institutional investor with a substantial financial interest in the litigation. *See* S. Rep. No. 104-98, at *11 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 690 (1995) ("The committee intends to increase the likelihood that institutional investors will serve as lead plaintiffs . . . ."); H.R. Conf. Rep. No. 104-369 (Conf. Rep.), at *34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 (1995) (explaining that "increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions"); *In re Cendant Corp. Litig.*, 264 F.3d 201, 273 (3d Cir. 2001) ("[T]he purpose of the [PSLRA] was to encourage institutional investors to serve as lead plaintiff, …"); *Lloyd v. CVB Fin. Corp.*, No. CV 10-06256 MMM (PJWx), 2011

WL 13128303, at *5 (C.D. Cal. Jan. 21, 2011) (noting that the PSLRA "establishes a preference that sophisticated institutional investors direct the course of securities cases").

Therefore, the appointment of ACERA as lead plaintiff is not only appropriate, it comports with the intent of the PSLRA and is in the best interests of the Class.

**B.     ACERA's Selection of Lead Counsel and Liaison Counsel Should Be Approved**

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the approval of the Court.  15 U.S.C. § 78u-4(a)(3)(B)(v).  "[T]he court should generally employ a deferential standard in reviewing the lead plaintiff's choices."  *Cendant*, 264 F.3d at 274.  Consistent with Congressional intent, a court should not disturb the lead plaintiff's choice of counsel, unless it is "necessary to protect the interests of the plaintiff class."  *See* H.R. Rep. No. 104-369, at 35, *as reprinted in* 1995 U.S.C.C.A.N. 730, 734.

Here, ACERA has selected Berman Tabacco as Lead Counsel.  Berman Tabacco is highly experienced in the area of securities litigation and class actions and has successfully prosecuted numerous matters on behalf of investors as detailed in the firm's resume.  *See* Lavallee Decl. Ex. 4.  Berman Tabacco is one of the country's premier class action law firms with over 40 years of experience prosecuting securities and antitrust cases.  *Id.*  The firm has been consistently recognized as a "Top Plaintiffs' Firm" for its work "on behalf of individuals and institutions who have suffered financial harm due to violations of securities or antitrust laws" by *Benchmark Litigation* and has similarly been recognized as a leading firm in securities and antitrust litigation by *Chambers USA*, *The Legal 500* and *Best Law Firms*.  *Id.*  Since the passage of the PSLRA, Berman Tabacco has held leadership positions in more than 100 federal securities class actions, recovering billions of dollars on behalf of defrauded investors, including:  *In re BP PLC Sec. Litig.*, No. 10-md-2185 (S.D. Tex.) (as co-lead counsel representing the Ohio Public employees retirement system, the firm reached a $175 million settlement); *In re IndyMac Mortgage-Backed*

9

*Sec. Litig*., No. 09-cv-04583-LAK (S.D.N.Y.) (as sole lead counsel representing the Wyoming State Treasurer and the Wyoming Retirement System, the firm reached settlements worth $346 million); *In re Fannie Mae 2008 Sec. Litig*., No. 08-cv-07831-PAC (S.D.N.Y) (as co-lead counsel representing the Massachusetts Pension Reserves Investment Management Board, the firm achieved a $170 million settlement). *Id.* Berman Tabacco has the skill and knowledge necessary to enable them to prosecute this action effectively and expeditiously.

Additionally, Cohen Milstein is well qualified to serve as Liaison Counsel. Cohen Milstein has a deep bench of talent to assist in this matter and has likewise successfully litigated scores of securities fraud lawsuits, recovering billions of dollars for investors, as well as successfully litigating other types of complex class actions and matters, including in this District. *Chambers USA* and *Legal 500* have consistently recognized Cohen Milstein as a "Top Tier Firm" and "Leading Firm" in Securities Litigation, Antitrust and Product Liability, Mass Torts. Additionally, Cohen Milstein's securities practice group was recognized by *Law360* as Practice Group of the Year for both 2022 and 2023. Cohen Milstein also maintains an office in Chicago, and its Resident Partner, Carol Gilden, has decades of experience litigating securities cases in the Northern District of Illinois and in federal courts nationwide. *See* Lavallee Decl. Ex. 5. *See* Manual for Complex Litig. (Fourth) § 10.221 (discussing role of liaison counsel and noting that "[l]iaison counsel will usually have offices in the same locality as the court").

The Court can be assured that by approving ACERA's selection of Lead Counsel and Liaison Counsel, the members of the Class will receive excellent legal representation.

//

//

//

10

## II.     CONCLUSION

ACERA respectfully requests that the Court (1) appoint it as Lead Plaintiff for the class; and (2) approve its selection of Lead Counsel and Liaison Counsel for the class.

Dated:  January 22, 2024                              Respectfully submitted,

**COHEN MILSTEIN SELLERS
  & TOLL, PLLC**

By:     /s/ Carol V. Gilden
                Carol V. Gilden (Ill. Bar No. 6185530)

190 South LaSalle Street, Suite 1705
Chicago, IL 60603
Telephone: (312) 357-0370
Email: cgilden@cohenmilstein.com

*Proposed Liaison Counsel for the Class*

**BERMAN TABACCO**
Nicole Lavallee (*Pro Hac Vice to be Filed*)
Daniel E. Barenbaum (*Pro Hac Vice to be Filed*)
Jeffrey V. Rocha (*Pro Hac Vice to be Filed*)
425 California Street, Suite 2300
San Francisco, CA  94104
Telephone: (415) 433-3200
Email: nlavallee@bermantabacco.com
         dbarenbaum@bermantabacco.com
         jrocha@bermantabacco.com

*Counsel for Movant Alameda County Employees'
Retirement Association and Proposed Lead Counsel
for the Class*

11