**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

John M. Erwin,

    *Plaintiff,*

v.

Veradigm Inc., *et al.*,

    *Defendants.*

No. 23 CV 16205

Judge Lindsay C. Jenkins

**ORDER**

Before the Court are cross motions filed by Gerald Hogan ("Hogan") and Alameda County Employees' Retirement Association ("ACERA") for appointment as lead plaintiff and approval of lead and liaison counsel in this securities class action brought pursuant to the Securities Exchange Act ("Exchange Act") as amended by the Private Securities Litigation Reform Act ("PSLRA"). The Court appoints ACERA as lead plaintiff because it satisfies the presumptive lead plaintiff criteria and is not subject to unique defenses. Likewise, the Court will approve ACERA's requested lead counsel, Berman Tabacco, and liaison counsel, Cohen Milstein Sellers & Toll PLLC.

**BACKGROUND**

Plaintiff John Erwin brought this action against Veradigm Inc. ("Veradigm") and several of its officers for allegedly making materially false and misleading statements in Veradigm's public statements, including SEC filings, press releases, and conference calls between February 26, 2021, and December 7, 2023 (the "Class Period") in violation of Sections 10(b) and 20(a) of the Exchange Act, as well as 17 C.F.R. § 240.10b-5. [Dkt. 10.] As outlined in the amended complaint, Veradigm needed to correct the above false statements through a series of disclosures throughout 2023 that damaged the company's stock price and ended with the forced resignation of Veradigm's CEO and CFO.

The first disclosure came on February 23, 2023, when Veradigm announced it overstated revenue by $20 million between Q3 2021 and Q4 2022 because of a duplicate recording error. [Dkt. 10 ¶ 4.] The next came on March 22, 2023, when Veradigm disclosed the revenue reporting error was greater than previously expected, and that its quarterly filings for 2021 and 2022 needed to be restated and could no longer be relied upon. [*Id.* ¶ 5.] In May, June, August, and September, Veradigm continued to issue public statements disclosing the finding of additional accounting errors and its inability to comply with Nasdaq listing and reporting requirements. [*Id.* ¶¶ 7-11.] Finally, on December 8, 2023, Veradigm announced that

1

its CEO, Richard Poulton, and CFO, Leah Jones, were forced to resign by its Board of Directors based on findings from an internal investigation, and that new leadership was determining whether additional corrections to Veradigm's financial statements were necessary. [*Id.* ¶ 12.] Plaintiff, a Veradigm shareholder, then filed this lawsuit based on the misrepresentations' negative impact on their investment in Veradigm.

### ANALYSIS

In class actions brought under the PSLRA, the Court is required to appoint a lead plaintiff, and if appropriate, approve the lead plaintiff's requested lead and liaison counsel. 15 U.S.C. § 78u-4(a)(3)(B). The selection process for appointing a lead plaintiff is straightforward. The presumptive lead plaintiff is the person or entity that (i) timely filed a motion to become lead plaintiff; (ii) has the largest financial interest at stake of the movants; and (iii) satisfies the requirements of Rule 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). A party can rebut this by showing either that the presumptive lead plaintiff will not fairly or adequately represent the class, or is subject to unique defenses. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Once appointed, the lead plaintiff can select counsel to represent the class, which is subject to court approval. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(v).

Here, Hogan and ACERA both timely filed motions to become lead plaintiff, but ACERA incurred alleged losses of $794,821 compared to Hogan's $25,429.11. [Dkt. 17 at 7; Dkt. 20 at 10.][1] Because ACERA has a larger financial interest in the litigation, it is the presumptive lead plaintiff unless it does not satisfy Rule 23.

To determine whether a potential lead plaintiff satisfies Rule 23 at this stage of the litigation, the Court focuses on adequacy and typicality. *Colwell v. Exicure Inc.*, 2023 WL 2572454, at *2 (N.D. Ill. Mar. 20, 2023). A lead plaintiff can satisfy the adequacy requirement "if (1) its claims are not antagonistic or in conflict with those of the class; (2) it has sufficient interest in the outcome of the case to ensure vigorous advocacy; and (3) it is represented by competent, experienced counsel who be able to prosecute the litigation vigorously." *In re Groupon, Inc. Sec. Litig.*, 2012 WL 3779311, at *3 (N.D. Ill. Aug. 28, 2012). ACERA contends that it is adequate to represent the class because its claims are aligned with other class members, it suffered a substantial loss, and retained sophisticated counsel. [Dkt. 20 at 11.] Hogan does not argue otherwise, and the Court agrees.

Typicality exists if the lead plaintiff's "claims or defenses … are typical of the claims or defenses of the class." *Colwell*, 2023 WL 2572454, at *2 (quoting *In re Groupon,* 2012 WL 3779311, at *3); *see also Hedick v. Kraft Heinz Co.*, 2019 WL 4958238, at *9 (N.D. Ill. Oct. 8, 2019) (typicality is satisfied when the lead plaintiff's claims "arise[] from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal

---

[1]    Citations to docket filings generally refer to the electronic pagination provided by CM/ECF, which may not be consistent with page numbers in the underlying documents.

theory.") According to Hogan, ACERA does not satisfy typicality and is subject to the unique defense of non-reliance because it purchased nearly a quarter of its Veradigm shares after Veradigm's first two corrective disclosures.[2] [Dkt. 33 at 2-6.]

ACERA purchased roughly 24% of its total Class Period stock in Veradigm after Veradigm began disclosing errors in February 2023; including after Veradigm announced certain financial statements could no longer be relied upon. [Dkt. 33 at 3-4; Dkt. 39 at 1; *see also* Dkt. 21-2.] Hogan argues that ACERA's post-disclosure purchases make it atypical based on the presumption that investors would not purchase Veradigm stock after learning about the company's ongoing issues, and that its decision to purchase stock under such circumstances renders ACERA open to the unique defense of non-reliance—that is, non-reliance on the stock's market price. [Dkt. 33 at 4-6.] Hogan further contends that even if ACERA successfully defeats these challenges, "the mere prospect … that it will become a focus of discovery" is enough to disqualify ACERA. [*Id.*] The Court disagrees.

The fundamental problem with Hogan's position is that there is no basis for the Court to conclude that other investors did not make some post-disclosure purchases, nor that ACERA did not rely on Veradigm's stock market price when it made its purchases. The unreliability of Veradigm's financial statements was public knowledge, and that knowledge is presumably baked into the new stock price under the fraud-on-the-market theory underpinning securities litigation. [Dkt. 39 at 2-3.] This is why the majority of courts have held "purchasing stock after a corrective disclosure does not, on its own, subject a Plaintiff to a unique defense." *Pub. Emps.' Ret. Sys. of Miss. v. TreeHouse Foods, Inc.*, 2020 WL 919249, at *5 (N.D. Ill. Feb. 26, 2020); *see also In re Northfield Lab'ys, Inc. Sec. Litig.*, 267 F.R.D. 536, 542 (N.D. Ill. 2010) ("the fact that an individual found it reasonable to purchase shares at a lower price after the alleged fraud was disclosed does not mean the individual failed to rely on the market price when s/he made purchases during the class period.") Put differently, there is nothing improper—and a party does not open itself up to unique defenses—simply because it purchased a company's stock post-disclosure so long as it is operating with only public knowledge, and has not explicitly disavowed reliance on the market price. *See TreeHouse Foods, Inc.*, 2020 WL 919249 at *5-6. And because post-disclosure purchases are not inherently suspect or unusual, there is no reason why ACERA's here would make it atypical amongst Veradigm investors.

This principle distinguishes this case from the out-of-district cases Hogan relies on. As the Court explained in *TreeHouse*, both *In re Safeguard Scientifics* and *Gamco Investors*[3] involved cases where post-disclosure purchases were made based on other factors beyond stock market price. *Id.* at *5. Likewise, the plaintiff in *Rocco*

---

[2]    Hogan blends his arguments regarding typicality and reliance, so the Court will do the same.

[3]    Full citations are *In re Safeguard Scientifics*, 216 F.R.D. 577 (E.D. Pa. 2003) and *GAMCO Investors, Inc. v. Vivendi, S.A.*, 927 F.Supp.2d 88 (SDNY 2013).

made his post-disclosure purchases despite his knowledge of a second, non-public fraud. *Rocco v. Nam Tai Electronics, Inc.*, 245 F.R.D. 131, 136 (S.D.N.Y. 2007) (proposed plaintiff subject to unique defenses because he "bought Nam Tai stock despite information he had about Nam Tai's allegedly manipulated finances … but nowhere is it alleged that this fraud has ever been publicly corrected.") And the proposed lead plaintiff in *In re Hebron* knew about the harmful contents of a non-public presentation. *In re Hebron Tech. Co., Ltd. Sec. Litig.*, 2020 WL 5548856, at *7 n.7 (S.D.N.Y. Sept. 16, 2020); *see also In re Bally Total Fitness Sec. Litig.*, 2005 WL 627960, at *6 (N.D. Ill. Mar. 15, 2005) (proposed plaintiff was an in-and-out trader that did not rely on market price).

Hogan has not pointed to any evidence here that ACERA acted on anything other than publicly available market knowledge. This failure likewise leaves the Court unpersuaded that any discovery or other attention related to these potential issues, even if ultimately unsuccessful, is enough to make ACERA atypical. *Rogers v. Baxter Int'l Inc.*, 2006 WL 794734, at *3 (N.D. Ill. Mar. 22, 2006) (to defeat typicality, the issue must "consume the merits of the case.") From the record before it, ACERA appears to have made a common investment decision (possibly shared by other investors) based on publicly-available knowledge as reflected in Veradigm's stock price. The Court therefore determines that ACERA is the presumptive lead plaintiff that is not subject to unique defenses and appoints ACERA lead plaintiff.[4]

Having determined that ACERA is the appropriate lead plaintiff, the Court likewise adopts ACERA's choice for lead and liaison counsel. Courts "should not disturb the lead plaintiff's choice of class counsel unless necessary to protect the interests of the class." *Hedick*, 2019 WL 4958238, at *11. Here, both Berman Tabacco (lead counsel) and Cohen Milstein Sellers & Toll PLLC (liaison counsel) have substantial experience and success in representing plaintiffs in securities class actions. [Dkt. 21-4, 21-5.] No party has raised any objection to the selection of this counsel, and the Court has no reason to doubt ACERA's choice. Berman Tabacco is hereby appointed lead counsel, and Cohen Milstein is appointed liaison counsel.

### CONCLUSION

For the reasons stated herein, ACERA is appointed lead plaintiff and Berman Tabacco and Cohen Milstein are approved as lead and liaison counsel, respectively.

Enter: 23 CV 16205
Date: March 1, 2024

_____
Lindsay C. Jenkins
United States District Judge

---

[4] For these same reasons, the Court denies Hogan's request to be appointed co-lead plaintiff.